# IN THE UNITED STATES BANKRUPTCY APPELLATE PANEL FOR THE NINTH CIRCUIT

In re CHRISTOPHER MICHAEL CALLAWAY,
Debtor

M. DATTANI CREDIT TRUST,

Appellant,

v.

CHRISTOPHER MICHAEL CALLAWAY,

PAUL MANSDORF, Chapter 7 Trustee

Appellees

On Appeal from the United States Bankruptcy Court
for the Northern District of California
Bankruptcy Case No. 24-50082-DM
Hon. Dennis Montali

## APPELLANT'S REPLY BRIEF

Brian M. Kandel (Bar No. 180952)
Kandel Law Firm, PC
4633 Old Ironsides Drive, Suite 115
Santa Clara, CA 95054
Telephone: (408) 837-7765
Email: brian@kandellawfirm.com
Attorneys for Appellant M. Dattani Credit Trust

Table of Contents

I. INTRODUCTION ..................................................................................1

II. ARGUMENT ......................................................................................1

  A. THE BANKRUPTCY COURT ERRED IN ORDERING ABANDONMENT BY
FAILING TO MAKE FINDINGS THE STATUE REQUIRES..........................................1

    1. *Appellee misidentifies the burden and the standard.* ..................................1

    2. *Appellees' "inconsequential value" claim is unsupported in the record
and clearly erroneous.*..................................................3

    3. *Appellee's "fresh start" argument has no statutory basis.*.......................4

    4. *The Notice Was Facially Defective and the Defects Were Not Harmless.* 5

  B. THE BANKRUPTCY COURT ABUSED ITS DISCRETION IN DENYING THE
TRUSTEE'S MOTION TO SELL ...................................................................7

    1. *The court applied a legal standard the Code does not recognize.* ...........7

    2. *Appellee's "gaming" characterization does not withstand scrutiny.*.......8

    3. *The $35,000 distribution was meaningful, not illusory.* .........................10

    4. *The Rule 9019 standard supports reversal, not affirmance.*...................11

    5. *The Trustee's neutral appellate posture does not validate the denial.* ..12

    6. *Appellant Possesses Standing; Appellee's standing and mootness
arguments fail.*..................................................13

  C. THE CLARIFICATION ORDER EXCEEDED THE COURT'S JURISDICTION OR
SCOPE ............................................................................. 15

    1. *The pending appeal divested the bankruptcy court of jurisdiction over the
scope of the Abandonment Order.* .........................................................15

    2. *The Clarification Order expanded the abandonment's scope; it did not
merely clarify it.* ..................................................16

3. *The claims against Dattani that the Clarification Order swept in were not part of the original abandonment motion.* ..................................................18

4. *Section 554(d) applies because the later-particularized claims were not adequately scheduled.* ..............................................................................19

5. *The court could not retroactively declare the abandonment effective "as of December 19, 2025."* ..............................................................................20

III. CONCLUSION AND REQUEST FOR RELIEF ..........................................20

**Cases**

*Catalano v. Commissioner of Internal Revenue*, 279 F.3d 682 (9th Cir. 2002)........6

*Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982) ........................16

*In re Ahearn*, 318 B.R. 638 (2003) ................................................................. 19, 20

*In re Baroni*, 654 B.R. 334 (Bankr. C.D. Cal. 2023)............................................9

*In re Berkeley Delaware Court, LLC*, 834 F.3d 1036 (9th Cir. 2014) .....................12

*In re Fitzgerald*, 428 B.R. 872 (BAP 9th Cir. 2010) .........................................12

*In re Fondiller,* 707 F.2d 441 (9th Cir. 1983)....................................................14

*In re Garcia*, 521 B.R. 680 (Bankr. D. Idaho 2014).............................................4

*In re Gill*, 574 B.R. 709 (2017).................................................................2, 4

*In re KVN*, 514 B.R. 1 (BAP 9th Cir. 2014) ..................................................... 3, 11

*In re Lahijani,* 325 B.R. 282 (BAP 9th Cir. 2005) ......................................... 11, 12

*In re Marino*, 234 B.R. 767 (BAP 9th Cir. 1999).............................................. 16, 20

*In re McAuley*, 66 B.R. 696, 702 (BAP 9th Cir.1986) .............................................17

*In re Mickey Thompson Entertainment Group, Inc.*, 292 B.R. 415 (BAP 9th Cir. 2003) ..............................................................................................12

*In re Mirzai*, 236 B.R. 8 (BAP 9th Cir. 1999) .................................................16

*In re Padilla*, 222 F.3d 1184 (BAP 9th Cir. 2000) .................................................16

*In re Pena*, 974 F.3d 934 (2000)....................................................................18

*In re Reed, 940 F.2d 1317 (9th Cir. 1991)* ......................................................6, 8

*In re Viet Vu*, 245 B.R. 644 (2000)..................................................................2

*Matter of Point Center Financial, Inc.*, 890 F.3d 1188 (2017) .............................14

*Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705 (9th Cir. 1986)6

*United States v. Hinkson*, 585 F.3d 1247 (9th Cir. 2009).........................................7

**Statutes**

*11 U.S.C. § 363(b)* .................................................................................8

*11 U.S.C. § 350(a)* .................................................................................9

*11 U.S.C*. *§ 554* ...................................................................... 2, 4, 19, 24

**Treatises**

*5 Collier on Bankruptcy* ¶ 554.01 (16th ed. 2022) .....................................................5

*5 Collier on Bankruptcy* ¶ 554.02[4] (16th ed. 2022)..................................................6

# I. INTRODUCTION

Appellee's answering brief asks this Panel to defer to the bankruptcy court's "discretion.", defer to the Trustee's purported concessions and defer to the Debtor's characterization of the record. The brief fails to identify any legal standard or basis that supports the three orders on appeal or explain why or how the bankruptcy court's rulings are consistent with the Code. The bankruptcy court committed three errors of law. *First*, the court ordered abandonment under § 554 without proper notice or making the findings the statute requires. *Second*, the court denied the Trustee's § 363(b) sale motion based on a non-existent legal standard — that a trustee who files a final report thereafter forfeits the right to sell estate assets, and any attempt to sell assets after filing a final report constitutes "gaming of the system." *Third*, while the first two appeals were pending, the court entered a "Clarification Order" (despite the lack of jurisdiction to the pending appeal) that: (1) applied the improper legal standard; and (2) compounded that error by materially expanding the scope of the Abandonment Order.

# II. ARGUMENT

## A. THE BANKRUPTCY COURT ERRED IN ORDERING ABANDONMENT BY FAILING TO MAKE FINDINGS THE STATUE REQUIRES

### *1. Appellee misidentifies the burden and the standard.*

Appellee contends the abandoned assets "were scheduled at zero or unknown value and had already been reported not worth administering."

1

[*Appellee's Br. 25*].  That framing omits the operative fact: at the time the court entered the Abandonment Order, the Trustee had executed a Purchase Contract to sell those very assets for $35,000, along with a waiver of claims by the Appellant creditor - direct, non-speculative evidence that the property has consequential value to the estate (and the other creditors). [**ER 18**].

Under § 554(b), the court may order abandonment only if the property is "burdensome to the estate" or "of inconsequential value and benefit to the estate." [*11 U.S.C. § 554*].  These are two separate elements and both must be satisfied.  [*In re Viet Vu*, 245 B.R. at 647].  The moving party before the bankruptcy court— here, the Appellee — bears the burden of establishing the statutory predicate by a preponderance of the evidence. [*In re Gill*, 574 B.R. 709, 714 (2017)].

The Appellee has failed to carry that burden.  The Trustee had a ready buyer at $35,000.  The Trustee moved to approve the sale in the exercise of the Trustee's business judgment.  The Trustee's own counsel told the court the sale would produce a distribution exceeding twenty percent to unsecured creditors.  [**ER 30 (0445) (12/19/25 Hr'g Tr. 20)**].  That showing alone defeats the "inconsequential value and benefit" predicate.  Where a trustee has a ready buyer, the property is obviously not of inconsequential value, as this Panel has held.  [*In re Viet Vu*, 245 B.R. at 647].  Here, the bankruptcy court made no finding to the contrary; it simply granted abandonment "for the reasons stated on the record" without addressing the

2

Trustee's business judgment, the appropriateness of the pending sale or the substantial and material distribution to unsecured creditors.

### 2. *Appellees' "inconsequential value" claim is unsupported in the record and clearly erroneous.*

Appellee argues the assets were properly valued at zero because the Debtor's schedules listed them at zero or unknown. [*Appellee's Br. 25-26*]. As noted above, there was no such finding as to the value of the assets by the bankruptcy court. Moreover, scheduled values do not foreclose subsequent evidence of actual value to an estate. This Panel affirmed the denial of a motion to compel abandonment where the trustee identified up to $48,000 in realizable value from the debtor's property — even though the debtor had listed the property at $500,000 in his schedules and disputed the trustee's valuation. [*In re Gill*, 574 B.R. at 714-715]. Here, the Trustee contracted to sell the assets for $35,000, a figure the Trustee himself defended at the December 19 hearing. [**ER 30** (0444-45) (12/19/25 Hr'g Tr. 19-20)]. As this Panel held in *In re KVN Corp.*, whether a distribution is "meaningful" is a question of fact for the bankruptcy court, but it must actually make that finding on an adequate record. [*In re KVN*, 514 B.R. 1, 5 (BAP 9th Cir. 2014)]. Here, the court never did.

The Debtor's own subsequent filings confirm the error. His First Amended Answer and Counterclaims (which are not part of the record) allege damages of $7.5 million arising from the same Laguna Street transaction. [**ER 55** (**1260**) (Dkt.

#109)]. Further, his omnibus motion referenced a $2.5 million Letter of Intent regarding assets. [**ER 18** (0357)]. Appellee dismisses these as measuring "different things" [*Appellee's Br. 29-30*], but regardless of label, they demonstrate that the claims the court ordered abandoned have substantial potential value. The resolution of whether an asset has "potential value" to the estate is a factual determination. [*In re Garcia*, 521 B.R. 680, 685-686 (Bankr. D. Idaho 2014)]. A bankruptcy court abuses its discretion when it orders abandonment on a finding without support in inferences that may be drawn from the facts in the record. [*In re Gill*, 574 B.R. at 714]. The court ignored the valuation issues all together.

### 3. Appellee's "fresh start" argument has no statutory basis.

Appellee devotes an entire section of Appellee's brief to the proposition that equity and the Bankruptcy Code's "fresh start" purpose required the court to return the cannabis applications to the Debtor. [*Appellee's Br. 30-31*]. Section 554 contains no fresh-start exception. The statute's sole predicates are "burdensome" or "inconsequential value and benefit." [*11 U.S.C. § 554*]. There is no third category for assets a court believes the debtor deserves to keep despite the Trustee wishing to sell them.

Appellee emphasizes that the cannabis equity applications are non-transferable to a non-equity party. [*Appellee's Br. 26*]. This issue was not addressed by the bankruptcy court, nor made part of the basis for the subject

4

rulings.  Even assuming *arguendo* that characterization is plausible, the non-transferability of one component of the assets does not render the entire asset bundle of inconsequential value.  The Trustee contracted to sell the full bundle — including the cannabis applications — for $35,000.  Whether the buyer could ultimately realize value from the cannabis applications was a risk the buyer assumed and immaterial to the matter before the court; the estate would have received $35,000 in cash regardless.  The bankruptcy court itself acknowledged this, stating the estate would receive "$35,000 and Dattani gets nothing.  So what?" [**ER 30** (0434, 0437) (12/19/25 Hr'g Tr. 9, 12)].  That is a judicial finding that refutes Appellee's argument on its face.

**4.    *The Notice Was Facially Defective and the Defects Were Not Harmless.***

The record establishes that the Appellee's Notice of Hearing was facially defective in three separate ways: (i) it did not state the hearing date; (ii) it did not inform recipients of their right to file and serve an objection; and (iii) it was not served on all creditors. [**ER 16, 17, 20 & 21**].  The bankruptcy court did not excuse the Debtor from providing such notice.  The requirement of notice and a hearing serves the fundamental purpose of ensuring that creditors receive an opportunity to object to the removal of property that might otherwise be available for distribution. [*5 Collier on Bankruptcy* ¶ 554.01 (16th ed. 2022)].  Property may not be abandoned by the trustee during a case unless the procedures set forth in the rules

5

are followed.  [*5 Collier on Bankruptcy* ¶ 554.02[4] (16th ed. 2022); *In re Reed, 940 F.2d 1317, 1321-1322 (9th Cir. 1991)*; *Catalano v. Commissioner of Internal Revenue*, 279 F.3d 682, 686 (9th Cir. 2002); *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 709-710 (9th Cir. 1986)].

Appellee contends any deficiency in notice of the abandonment motion was "harmless" because (a) Appellant conceded service on itself, and (b) no other creditor objected.  [*Appellee's Br. 27-28*].  But the harmless-error analysis cannot rest on the absence of objections from creditors *who were never notified*.  [See, e.g., *In re Garcia*, 521 B.R. at 686 n.8].  Federal Rule of Bankruptcy Procedure 6007(b) requires that a motion to compel abandonment be served on the trustee, "all creditors," and the United States trustee.  [*Fed. R Bankr. P. 6007(b)*].  None of the Certificates of Service filed by the Debtor show service upon any party other than Appellant and the Trustee (via their respective counsel).  [**ER 23, 24 & 26**].  Contrary to the Appellee's contentions [*Appellee's Br. 28*], the Sale Notice did not substitute for notice of the abandonment. An abandonment motion seeks to remove property from the estate entirely, foreclosing any possibility of liquidation or distribution, while a creditor who receives notice of a sale motion may reasonably expect that the property will remain in the estate and that proceeds will be available for distribution.

That the Debtor later filed a second differing motion with broader service does not retroactively cure the jurisdictional defect in the original Abandonment Order. The later motion sought a different, expanded scope of abandonment; it was not a *nunc pro tunc* correction of the original notice failure. The notice requirement is temporal; it must be satisfied before the order is entered. Once an abandonment order has been entered without proper notice, the defect cannot be cured by providing notice after the fact.

## B. THE BANKRUPTCY COURT ABUSED ITS DISCRETION IN DENYING THE TRUSTEE'S MOTION TO SELL

### 1. *The court applied a legal standard the Code does not recognize.*

The central question on appeal is not whether the bankruptcy court's factual findings were illogical or implausible. It is whether the court "identified the correct legal rule to apply to the relief requested." [*United States v. Hinkson*, 585 F.3d 1247, 1261-1262 (9th Cir. 2009)]. Under *Hinkson*'s two-part abuse-of-discretion test, that question is first reviewed de novo, and second, "[i]f the trial court failed to do so, we must conclude it abused its discretion." [*Id.*].

Appellee argues that the court did not adopt a "categorical rule" barring post-final-report sales but instead exercised discretion based on "the integrity and finality of the administration process." [*Appellee's Br. 18*]. The distinction is semantic. The court made plain in the proceedings that it was adopting its own non-statutory rule for this case. The court expressly denied the sale because the

Trustee proposed it after the Final Report was approved and filed it after the Abandonment Motion, characterizing that sequence as "gaming the system." [**ER 30** (0441-0442) (12/19/25 Hr'g Tr. 16-17)]. Whether labeled a "categorical rule" or a "process integrity" finding, the operative legal principle is the same: the court held that the timing of the sale proposal — after the Final Report — was itself a ground for denial.

That is not a recognized legal standard. Under 11 U.S.C. § 363(b), the Trustee had authority to sell estate property "after notice and a hearing." [*11 U.S.C. § 363(b)*]. Under 11 U.S.C. § 350(a), the case remained open and the estate remained subject to administration until a formal closing order. [*11 U.S.C. § 350(a)*]. Approval of the Final Report did not close the case, discharge the Trustee, or extinguish his statutory authority. [See, e.g., *In re Reed*, 940 F.2d at 1321]. The court applied a timing-based disqualification that has no basis in the Code, the Rules, or any authority Appellee has cited. That is a legal error subject to *de novo* review — not a discretionary finding entitled to deference.

### 2. *Appellee's "gaming" characterization does not withstand scrutiny.*

Appellee relies heavily on the court's position that the Trustee, his counsel, and Dattani "manipulated the system" by negotiating a sale after the Final Report was approved. [*Appellee's Br. 18-19*]. But the record Appellee cites establishes only that the Trustee continued to market the assets after the November 14 hearing

8

— exactly what a trustee is supposed to do with estate property. The court itself indicated that further marketing post-final report by the Trustee was authorized and appropriate. [**ER 14** (0264-65, 0275) (11/14/25 Hr'g Tr. 5, 8, 14)].

The Trustee's counsel explained at the November 14 hearing that the prior offers had been "rejected… both substantively" and that "there was never an offer for these claims" at the price ultimately reached. [**ER 14** (0264-65) (11/14/25 Hr'g Tr. 3-4)]. The court itself acknowledged the Trustee's authority to continue marketing by noting the possibility that Appellant might be "squeeze[d] some more" and there might be "an offer from Dattani that he [the Trustee] thinks should be accepted" [**ER 14** (0271, 0275) (11/14/25 Hr'g Tr. 10, 14)]. The Purchase Contract dated November 21, 2025 - was executed on November 22-23, 2025 — nine days after the hearing — at a significantly improved price. [**ER 30** (0444) (12/19/25 Hr'g Tr. 19)]. That a trustee continues negotiating after rejecting an inadequate offer and ultimately secures a better deal is not gaming the bankruptcy system; it is fulfilling the Trustee's duties.

The court's characterization of this sequence as "manipulation" is unsupported as there is zero evidence that the Trustee acted in bad faith or that the sale terms were inadequate. "The court's obligation in § 363(b) sales is to assure that optimal value is realized by the estate under the circumstances." [*In re Baroni*, 654 B.R. 334, 342 (Bankr. C.D. Cal. 2023)]. Courts also look to whether there is

9

an adequate business justification for the sale and whether it is "in the best interest

of the estate, *i.e.* it is fair and reasonable, that it has been given adequate

marketing, that it has been negotiated and proposed in good faith, that the

purchaser is proceeding in good faith, and that it is an 'arms-length' transaction."

[*Id*. (citations omitted)]. The Trustee made a showing that all these conditions

were met. There is nothing in the record to support or suggest anything to the

contrary. The bankruptcy court made no determination that the proposed sale

amount or terms were unreasonable or that the Trustee had not properly exercised

business judgment. This constitutes abuse of discretion. The court substituted its

own timing requirements and its own judgment regarding the propriety of the sale

of the assets – all to the detriment of the estate and its creditors.

### 3. *The $35,000 distribution was meaningful, not illusory.*

Appellee contends the proposed distribution was "illusory" because

Dattani's consideration consisted "overwhelmingly" of waiving its own claim.

[*Appellee's Br. 20-21*]. The record does not support that illogical characterization.

The Purchase Contract provided for $35,000 in cash. The Trustee's counsel told

the court the distribution to unsecured creditors would exceed twenty percent. [**ER

30** (0445) (12/19/25 Hr'g Tr. 20)]. Whether a distribution is "meaningful" is a

factual question, and this Panel held in *In re KVN Corp.* that the bankruptcy court

must make specific findings on that question. [*In re KVN*, 514 B.R. 1, 5 (BAP 9th

Cir. 2014]. A twenty-percent distribution to unsecured creditors in a Chapter 7 case is meaningful by any measure; the median Chapter 7 distribution is far lower.

The court's depiction of the waiver of Dattani's approximately $1.5 million claim as the only real consideration ignores the $35,000 in cash the estate would have received. [**ER 30** (0446) (12/19/25 Tr. 21)]. Whether Dattani also waived its claim as part of the transaction does not diminish the cash component. To the contrary, the waiver enhanced the distribution by eliminating a competing claim that would have diluted recoveries. The court seemingly treated the waiver as evidence of bad faith when it was, in fact, additional consideration that increased the estate's net distribution. The court's treatment of the waiver is unsupported by anything in the record and is, once again, an abuse of discretion warranting reversal.

### 4. *The Rule 9019 standard supports reversal, not affirmance.*

Appellee argues that because the sale would have transferred the estate's claims to the party targeted by those claims, heightened scrutiny under Rule 9019 applies. [*Appellee's Br. 21-22*]. Appellant agrees. The sale of estate causes of action to a present or potential defendant must be evaluated under both the § 363(b) business judgment standard and the "fair and equitable" test of Rule 9019. [*In re Lahijani,* 325 B.R. 282, 288 (BAP 9th Cir. 2005)]. That dual standard is established by this Panel's decisions in *In re Lahijani*, *In re Fitzgerald*, 428 B.R.

11

872, 883 (BAP 9th Cir. 2010) and *In re Mickey Thompson Entertainment Group, Inc.*, 292 B.R. 415, 421 (BAP 9th Cir. 2003)] and confirmed by the Ninth Circuit. [*In re Berkeley Delaware Court, LLC*, 834 F.3d 1036, 1040 (9th Cir. 2014)].

But the existence and requirements for the Rule 9019 standard cuts in Appellant's favor, not Appellee's. Here, the bankruptcy court simply did not apply this requisite legal standard. In summarily rejecting the proposed sale, the court never evaluated the four *A & C Properties* factors. It never weighed the probability that the estate would succeed on its claims against Dattani if those claims were prosecuted rather than sold. It never considered the expense and delay of that litigation. And it never addressed whether objecting creditors should be permitted to prosecute the claims for the estate's benefit — a consideration *Lahijani* held the court must address. [*In re Lahijani,* 325 B.R. at 288].

Here, the bankruptcy court went further than failing to apply Rule 9019 — it summarily denied the sale on a court-made standard not recognized or existing under the Code. That is an abuse of discretion under *Hinkson*'s first step.

### 5. *The Trustee's neutral appellate posture does not validate the denial.*

Appellee observes that the Trustee has not appealed and takes no position before this Panel. [*Appellee's Br. 23*]. But the Trustee's decision not to appeal is not evidence that the sale was improper. The Trustee moved to approve the sale, stated that the sale was appropriate in exercise of the Trustee's business judgment,

and asserted that the sale would substantially benefit the creditors of the estate. Nowhere has the Trustee retracted those statements. Indeed, the Trustee proposed the sale, defended it at the December 19 hearing, and told the court the distribution would exceed twenty percent. [**ER 30** (0445) (12/19/25 Hr'g Tr. 20)]. Furthermore, a trustee's decision not to participate in an appeal says nothing about the legal correctness of the order below. At the very most, it merely shows that the Trustee chose not to expend further resources litigating an appeal.

Nor does the Trustee's later concession at the March 13 hearing — that "there is nothing left to administer" [**ER 50** (1158-60) (3/13/26 Hr'g Tr. 7--9)] — validate the denial. By March 13, the bankruptcy court had already denied the sale and ordered abandonment. The Trustee's concession that nothing remained was a description of the post-order status quo based on the court's rulings, not an endorsement of the orders that created it. The question on appeal is whether those orders were legally correct when entered, not whether the Trustee has since reconciled himself to them.

### 6. *Appellant Possesses Standing; Appellee's standing and mootness arguments fail.*

Appellee contends Appellant lacks standing as a "person aggrieved" and that the appeal is moot. [*Appellee's Br. 14-17*]. Both arguments are meritless. On standing, the "person aggrieved" standard requires that the appellant be "directly and adversely affected pecuniarily" by the order. [*In re Fondiller,* 707

<div align="center">13</div>

F.2d 441, 442 (9th Cir. 1983)].  Appellant unquestionably satisfies that test.

Appellant is a creditor of this estate.  A creditor has "a direct pecuniary interest in a

bankruptcy court's order transferring assets of the estate."  [*In re P.R.T.C., Inc.*,

177 F.3d 774, 778 (9th Cir. 1999)].  The Sale Order and Abandonment Order

directly reduced the assets available to satisfy creditors' claims by abandoning

property the Trustee had contracted to sell for $35,000.  That is a direct pecuniary

injury.  [*Matter of Point Center Financial, Inc.*, 890 F.3d 1188, 1191-1192 (2017)].

Furthermore, denial of the Sale Motion and granting of the Abandonment Motion

and Clarification Motion increased Dattani's burdens and impaired its enforcement

rights in having to defend against Appellee's state court claims.  [*Id*.].

Appellee's framing — that Appellant's "only injury is the loss of a release of

the estate's claims against itself" [*Appellee's Br. 16*] — is contradictory and

conflates two distinct interests.  As a creditor, Dattani has standing to challenge

orders that reduce estate value and diminish distributions.  As the proposed

purchaser, Dattani had a separate interest in acquiring the assets.

On mootness, Appellee argues reversal would afford "no effective relief"

because the cannabis applications are non-transferable and the estate has been

wound down.  [*Appellee's Br. 14-15*].  But the relief Appellant seeks is reversal

and remand — not immediate reinstatement of the Purchase Contract.  This Panel

can reverse the erroneous orders and remand for the bankruptcy court to apply the

correct legal standards.  The Trustee's authority to administer the estate revives

upon reversal of the orders that prematurely terminated his administration.  The

status quo has not changed in an irreversible manner notwithstanding the denial of

a stay.  The mere absence of a stay does not moot the appeal.  Contrary to

Appellee's claims, there is nothing in the record evidencing a change in the status

quo following entry of the Abandonment Order other than the Appellee proceeding

with his newly scheduled litigation claims.  [**ER 42 & 55** (1260) (Dkt. #109)].

Appellee's unsubstantiated claim of a change in the status quo is not, in and of

itself, evidence that may be relied upon.  There is nothing in the record supporting

his claim of post-abandonment, "reliance-based" efforts and expenditures related

to the various assets abandoned to him, particularly his license applications. [**ER

16, ER 22**; *Appellee's Br. 23*]. Furthermore, Appellee's argument here is

circuitous.  Appellee was fully aware of the pending appeals challenging the orders

and cannot rely upon illusory or non-existent claims of "reliance" on those orders

to argue that no effective relief exists because of said "reliance."

**C.    THE CLARIFICATION ORDER EXCEEDED THE COURT'S JURISDICTION OR
        SCOPE**

   **1.    *The pending appeal divested the bankruptcy court of jurisdiction over
           the scope of the Abandonment Order.***

        The Clarification Order was entered on March 19, 2026, after Appellant had

already filed notices of appeal from the Sale Order and the Abandonment Order.

"[T]he filing of a notice of appeal… confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." [*Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)].  The Ninth Circuit applied this rule directly to the bankruptcy appellate hierarchy.  [*In re Padilla*, 222 F.3d 1184, 1190 (BAP 9th Cir. 2000)].

Appellee concedes this rule but argues the Clarification Order falls within the bankruptcy court's retained authority to "interpret and clarify its own order." [*Appellee's Br. 31-32*].  Legally, the retained-jurisdiction exception is narrower than Appellee contends.  Courts "distinguish between actions to enforce the judgment, which are permissible, and actions to expand upon or alter the judgment, which are prohibited." [*In re Marino*, 234 B.R. 767, 769-770 (BAP 9th Cir. 1999)].  This Panel held that "the trial court cannot enter an order that supplements the order on appeal because such supplementation would change the status quo." [*In re Mirzai*, 236 B.R. 8, 10 (BAP 9th Cir. 1999)].  The test is whether the post-appeal order changes the existing state of affairs while appellate jurisdiction is active -  not whether the court intended the supplementation. [*Id.*].

2. ***The Clarification Order expanded the abandonment's scope; it did not merely clarify it.***

The original Abandonment Order [**ER 32**] incorporated the court's ruling "for the reasons stated on the record" and referenced the assets described in the Debtor's initial Motion to Compel Abandonment [**ER 16**].  The Clarification Order

substituted a reference to the Debtor's later Omnibus Motion [**ER 22** (Dkt. 123)], which described a materially broader universe of assets — including specific causes of action and claims not listed in Dkt. 114 [**ER 16**]. Appellee characterizes this substitution as somehow correcting a "glitch." [*Appellee's Br. 33*]. That characterization is implausible given that the Omnibus Motion was never set for a hearing and the Court never ruled on it. [**ER 22-29**; **ER 30** (0443) (12/19/25 Hr'g Tr. 8)]. But whether the original order's reference to Dkt. 114 was intentional or inadvertent, the effect of substituting Dkt. 123 [**ER 22**] was to significantly and substantively change the operative scope of the ordered abandonment. [**ER 30** (0438-0439) (12/19/25 Hr'g. Tr. 13-14)]. That is not clarification; it is modification and major expansion of the prior ruling. A clarification resolves "genuine ambiguity about the original order's meaning without adding new legal content." [*In re McAuley*, 66 B.R. 696, 702 (BAP 9th Cir. 1986)].

In *In re McAuley,* this panel upheld a "clarification" because it "simply made explicit [the] court's intention" that was already "obvious from [the] terms of the original order itself." [*In re McAuley*, 66 B.R. at 702]. The Abandonment Order's reference to Dkt. 114 was not ambiguous — it was specific. The Clarification Order did not interpret that reference; it replaced it with a different one. That is the kind of supplementation *Mirzai* holds is impermissible pending an appeal.

17

### 3. The claims against Dattani that the Clarification Order swept in were not part of the original abandonment motion.

Appellee argues the claims against Dattani are not "new" because the sole potential future interference claim was scheduled in 2024. [*Appellee's Br. 34*]. But the operative counterclaims — for fraudulent inducement, fraudulent concealment, breach of the covenant of quiet enjoyment, and related theories — were not scheduled, were not listed in Dkt. 114 [**ER 16**] and did not exist in particularized form until the Debtor filed his First Amended Answer and Counterclaims in March 2026. [**ER 55** (1260) (Dkt. #109)]. These are distinct causes of action with distinct elements and a claimed damages floor of $7.5 million. [**ER 1, 3 & 42**].

The fact that these claims arise from the same Laguna Street transaction as the originally scheduled sole potential future claim for interference does not make them the same asset. A general reference to a "potential future claim against former landlord" is not the same as particularized causes of action for fraud, concealment, and statutory violations. For example, in *In re Pena,* the Court of Appeals for the Ninth Circuit held that a trustee's notice that she was abandoning real property did not provide the clear notice that would be required if the trustee were also abandoning rents from those properties that she was holding, and therefore the rents were not abandoned. [*In re Pena*, 974 F.3d 934, 939-940 (2000)]. Section 554(d) provides that property "not abandoned under this section

and… not administered in the case remains property of the estate." [*11 U.S.C. § 554(d)*].  To the extent the Clarification Order purported to abandon claims that were not specifically before the court on December 19, 2025, that portion of the abandonment order is legally and procedurally improper and those claims remain property of the estate under § 554(d).

### 4. *Section 554(d) applies because the later-particularized claims were not adequately scheduled.*

Appellee contends § 554(d) "does not apply to a scheduled, disclosed claim." [*Appellee's Br. 35*].  But the cases Appellee distinguishes — *In re Brown* and *In re Lopez* — establish the principle that controls here: property not adequately disclosed in the debtor's schedules remains property of the estate.  [See, e.g., *In re Ahearn*, 318 B.R. 638, 642 (2003) (discussing 11 U.S.C. § 554(c))].  The specific fraud, concealment, and statutory claims the Debtor now values at $7.5 million bear no resemblance to the generic "potential future claim" listed in his 2024 schedules at unknown value.  [**ER 1, 3 & 42**].  The schedules did not disclose these specific causes of action, did not identify their elements or legal theories, and valued the entire category at zero or unknown.

Where an abandonment is ordered based upon debtor schedules that disclose only a generic reference to a "potential" claim with zero or unknown value and the debtor then subsequently particularizes that generic reference into previously undisclosed specific, high-value causes of action, the particularized claims are not

deemed abandoned under § 554(c) because they were not adequately "scheduled under § 521(a)(1)" in a form that put the trustee and creditors on notice of their nature and potential value.  Section 554(d) preserves the estate's interest in those claims.  [*11 U.S.C. § 554(d)*; *In re Ahearn*, 318 B.R. 638, 642 (2003)].

> **5.      *The court could not retroactively declare the abandonment effective "as of December 19, 2025."***

Appellee dismisses Appellant's objection to the Clarification Order's retroactive effective date as "confus[ing] interpretation with modification." [*Appellee's Br. 33*].  That is not so.  The original Abandonment Order was entered on December 19, 2025, with a defined scope [**ER 16** (Dkt. 114)].  The Clarification Order, entered March 19, 2026, purported to state that a broader scope [**ER 22** (Dkt. 123)] of assets (including some not even pled until March 2026) had been abandoned "as of" December 19.  That is a *nunc pro tunc* modification, not a clarification, precisely the kind of alteration the divesting rule prohibits.  [*In re Marino*, 234 B.R. at 769-770)].

For the foregoing reasons, Appellant requests the Panel reverse and remand the Abandonment Order and the Sale Order and vacate the Clarification Order.

<div style="margin-left:40%">

Respectfully submitted
KANDEL LAW FIRM, PC
Dated: June 12, 2026  By: /s/ Brian M. Kandel
Brian M. Kandel
Attorney for Appellant M. DATTANI CREDIT TRUST

</div>

**CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF BANKRUPTCY PROCEDURE 8015(7)**

The foregoing Appellant's Reply Brief is in compliance with the type-volume limitation set forth in Rule 8015(7)(B) of the Federal Rules of Bankruptcy Procedure. The number of words in the foregoing brief according to the word-processing system used to prepare the brief is 4,837.

Respectfully submitted

KANDEL LAW FIRM, PC

Dated:  June 12, 2026          By:    /s/ Brian M. Kandel
                                              Brian M. Kandel
                                              Attorney for Appellant M. DATTANI
                                              CREDIT TRUST

## CERTIFICATE OF SERVICE WHEN NOT ALL PARTICIPANTS ARE CM/ECF PARTICIPANTS

I hereby certify that on June 12, 2026, I electronically filed the foregoing Reply Brief with the Clerk of the Court for the Bankruptcy Appellate Panel for the Ninth Circuit by using the CM/ECF system.

I further certify that parties of record to this appeal who either are registered CM/ECF users, or who have registered for electronic notice, or who have consented in writing to electronic service, will be served through the CM/ECF system,

**Brent David Meyer, Esquire**
Michael H. Meyer
Chapter 13 Trustee
Suite 204
7550 N Palm Ave
Fresno, CA 93711
Direct: 559-275-9512
Attorney for Paul Mansdof, Chapter 7 Trustee

**Brent D. Meyer, Esquire**
Meyer Law Firm
268 Bush Street #3639
San Francisco, CA  94104
Phone: (415) 765-1588
Email: brent@meyerllp.com
Attorney for Paul Mansdorf, Chapter 7 Trustee

**Christopher Michael Callaway**
2489 15th Street
San Francisco, CA 94114
*Debtor and Appellee In Pro Se*
Email: chris1callaway@gmail.com

I further certify that some of the parties of record to this appeal have not consented to electronic service. I have mailed the foregoing document by First Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days, to the following parties:

**Christopher Michael Callaway**
2489 15th Street
San Francisco, CA 94114
*Debtor and Appellee In Pro Se*


/s/ Brian M. Kandel
Brian M. Kandel
Attorneys for Appellant M. Dattani Credit Trust